# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Angelica Castanon<br>1105 Park Rd. NW<br>Washington, DC 20010 | )<br>)<br>)<br>) |
| Gabriela Mossi<br>2853 Ontario Rd. NW<br>Washington, DC 20009 | )<br>)<br>)<br>)     Civil Action No.1:18-cv-02545-TSC |
| Alan Alper<br>904 New Hampshire Ave. NW<br>Washington, DC 20037 | )<br>)<br>)<br>) |
| Deborah Shore<br>3408 Patterson St. NW<br>Washington, DC 20015 | )<br>)<br>)<br>) |
| Laurie Davis<br>2331 Porter St. NW<br>Washington, DC 20008 | )<br>)<br>)<br>) |
| Silvia Martinez<br>1300 Randolph St. NW<br>Washington, DC 20011 | )<br>)<br>)<br>) |
| Vanessa Francis<br>4000 10th St. NW<br>Washington, DC 20017 | )<br>)<br>)<br>) |
| Abby Loeffler<br>710 4th St. SE<br>Washington, DC 20003 | )<br>)<br>)<br>) |
| Susannah Weaver<br>1320 North Carolina Ave. NE<br>Washington, DC 20002 | )<br>)<br>)<br>) |
| Manda Kelley<br>4210 Benning Rd. NE<br>Washington, DC 20019 | )<br>)<br>)<br>) |
| Absalom Jordon | ) |

RECEIVED

JUN 0 4 2019

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| 4335 4th St. SE | ) |
| Washington, DC 20032 | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| The United States of America, et al., | ) |
| | ) |
| Defendants | ) |

**BRIEF OF *AMICUS CURIAE* DISTRICT OF COLUMBIA**

**IN SUPPORT OF THE NEW DC VOTING RIGHTS LAWSUIT AND AMENDED COMPLAINT FILED BY**

**DC APPLESEED AND THE LEGAL TEAM FROM**

**HARRIS, WILTSHIRE & GRANNIS LLP,**

## I.   INTERESTS OF THE AMICUS CURIAE

I am resident of the District of Columbia and the founder and Executive Director of a non-profit political organization called Douglass, County, Maryland. This organization, named for Frederick Douglass, and with the initials "DC", advocates for the return to Maryland of non-federal lands which exist in the monumental core of the city, originally ceded to the District of Columbia, for the specific purpose of providing current District of Columbia citizens full voting rights in Congress. Douglass County, Maryland shares the same goal as the appellants in this case, full voting rights for the residents of the District of Columbia, though presents a different process to obtain that goal.

The purpose of this Amicus Curiae is to advise the Court of the following:

1) that hundreds of thousands of Washingtonians are deprived of the constitutional right to vote for legislators with the voting power to represent their interests in Congress;

2) that voting rights for these United States citizens may be achieved through the legal process of retrocession, in which DC's non-federal use lands Maryland once ceded to the District would be returned, thereby making them citizens living in the State of Maryland;

3) that Congress and the President of the United States, and the State of Maryland have the power to provide DC residents with complete voting rights through retrocession, and

4) that Congress is legally required to ensure full voting rights and representation in both Houses of Congress for all legal citizens of the Unites States.

## II. HISTORICAL ARGUMENT

The historical points made by the Plaintiffs in this action are correct and, most importantly, the harm described by Plaintiffs is real. Plaintiffs' filing, however, is incomplete as it fails to address the full historical record relating to the lands that the state of Virginia originally ceded to the nascent United States Government. As described in paragraph 95 of the filing, the District of Columbia was created from land ceded by both the State of Virginia and Maryland. Plaintiffs' filing, however, fails to even address what occurred with the lands that Virginia donated but were ultimately not utilized for federal government purposes. In fact, between 1846 and 1847, those lands originally belonging to Virginia were returned to the State of Virginia through the process of retrocession. The only means by which the residents of the District of

Columbia have ever gained their complete voting rights without moving out of the District is through the process of Retrocession.

The 29th Congress passed legislation on July 9, 1846, to return all the District's territory south of the Potomac River to the Commonwealth of Virginia, pursuant to a referendum. President James K. Polk signed the legislation the next day. A referendum on retrocession was held on September 1–2, 1846. The residents of the city of Alexandria voted in favor of the retrocession, 763 to 222; however, the residents of Alexandria County voted against retrocession 106 to 29. Despite the objections of those living in Alexandria County, President Polk certified the referendum and issued a proclamation of transfer on September 7, 1846. The Virginia legislature, however, did not immediately accept the retrocession offer. Virginia legislators were concerned that the people of Alexandria County had not been properly included in the retrocession proceedings. After months of debate, the Virginia General Assembly voted to formally accept the retrocession legislation on March 13, 1847.

Most of the Virginia side of what was formerly the District of Columbia is now called Arlington, County, Virginia. This process can be repeated and Douglass County, Maryland can be created, if that its citizens choose to call it.

### III.   THE POWER AND VALUE OF SENATORS

The disenfranchisement of the residents of the District of Columbia is most pronounced due to our lack of representation in the U.S. Senate. American citizens without voting representation in Congress cannot meaningfully exercise their First Amendment right "to petition the Government for a redress of grievances." In the 21st century, "contact us" tabs of U.S.

Representatives and Senators won't even accept petitions of people from zip codes outside the district or state that a member represents. Especially in the Senate, which conducts so much of its business by "unanimous consent", lack of representation cripples and discriminates against District residents and businesses (for example, when confronted with nominations of persons deemed hostile to their interests or incompetent to address them, or when choosing to place a "hold" on some other matter in order to force attention to grievances). See United States Senate, *Senate Legislative Process*, Chapter 1: Overview: The Legislative Framework in the Senate, Unanimous Consent, Summary, and Chapter 3: Senate Floor Procedure, Unanimous Consent Agreements.

The power and value of Senators must be appreciated by the Court. To the extent that Plaintiff's Filing did not emphasize this power and value, I do so here. A second retrocession would elegantly provide residents of the District of Columbia with complete voting rights in the Senate as well as the House but without adding to the number of Senators in the Senate. An addition of two more United State Senators, with such power and value, may not be politically acceptable to the present members of the Senate and their constituents.

### IV.   CONCLUSION IN SUPPORT OF PLAINTIFFS' PRAYER FOR RELIEF, ALBEIT EXPANDED TO INCLUDE A SECOND RETROCESSION AS A PRACTICAL, ECONOMICAL, AND NON-PARTISAN WAY TO SATISFY THE JUDGMENT

Plaintiffs' Filing prays for seven forms of relief. Each one of these means of relief are justified. However, two points must be made in connection with these means of the relief.

Plaintiff's third request for relief calls for a reasonable period of time to provide Congress an opportunity, on the basis of the Court's declaratory judgment, to fashion a constitutional remedy that will vindicate the constitutional rights of the citizens of the District of Columbia to vote for members of the United States Senate. The residents of the District of Columbia have not had complete voting rights for 218 years. This Amicus Curiae suggests that a "reasonable amount of time" should not exceed 90 days.

Although 51st Plaintiffs' fourth request for relief is incomplete by design. Although 51st Statehood is Plaintiffs' primary goal, the Court should require the consideration of other means of achieving enfranchisement, including having the District retrocede, as the Virginia portion of the District of Columbia did. Retrocession is a more feasible method to achieve enfranchisement as it would be politically neutral, it would not create any more members of the Senate, and is the most judicious solution.

Respectfully submitted,

David C. Krucoff (Pro se)

Executive Director & Founder
Douglass County, Maryland
733 15th St. NW #1115
Washington, DC 20005
202-437-7443
www.douglasscountymd.org

Joined by Lanny J. Davis, Attorney at law, and resident of the State of Maryland

Lanny J. Davis
12517 Brackenhill Lane
Potomac, MD 20854
202-744-2792