## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANGELICA CASTAÑON, *et al.*,

        *Plaintiffs*,

    v.

UNITED STATES, *et al.*,

        *Defendants.*

Civil Action No. 18-2545
Three-Judge Court
(RDM, RLW, TNM)

Before: WILKINS, *Circuit Judge*, and MOSS and MCFADDEN, *District Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

## <u>MEMORANDUM OPINION</u>

      WILKINS, *Circuit Judge*: This suit was brought by registered voters residing in the District of Columbia (the "District") in an effort to secure for themselves, and others similarly situated, the ability to elect voting representatives to the United States Congress. *See generally* Am. Compl., ECF No. 9. Suing Senate and Executive officials,[1] Plaintiffs challenged their lack of the congressional franchise as unconstitutional because violative of their rights to equal protection, due process, and association and representation. *Id.* This three-judge Court was convened under 28 U.S.C. § 2284(a), which provides that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts[.]" *See* Mem. Op. 5-6, ECF No. 54 (finding three-judge Court to have jurisdiction over Plaintiffs' claims challenging the District's lack of representation in the House of Representatives). Upon consideration of Defendants' motion to dismiss, ECF No. 21, and Plaintiffs' motion for summary judgment, ECF No. 23, we declined to exercise jurisdiction over those of Plaintiffs' claims aimed at attaining the Senate franchise, Mem. Op. 7, dismissed those claims aimed at securing the House franchise, *id.* at 13, 25, and denied Plaintiffs' summary-judgment motion, *id.* at 26.

      Plaintiffs now move the Court for reconsideration. Mot. Reconsid. ("Motion"), ECF No. 58. Because we find that justice does not require reconsideration, we deny the Motion.

### I.      Procedural History

      In our Memorandum Opinion, we: (1) held that our consideration of Plaintiffs' House claims as a three-judge Court was proper under 28 U.S.C. § 2284(a), Mem. Op. 5-6; (2) declined

---

[1] Initially, Plaintiffs also sued House officials, Am. Compl. ¶¶ 59-61, but they voluntarily dismissed the House Defendants, ECF No. 20, who then filed an *amicus* brief in support of Plaintiffs, ECF No. 38.

to exercise jurisdiction over those of Plaintiffs' claims seeking representation in the Senate, *id.* at 6-7; (3) ruled that, insofar as Plaintiffs sought to compel affirmative congressional action, any such claims were nonjusticiable for want of Article III standing, *id.* at 13; and (4) held that those of Plaintiffs' House claims that challenged apportionment, though justiciable, *id.* at 14, were foreclosed by the Constitution, *id.* at 25; we therefore dismissed those claims, *id.*  Plaintiffs' Senate claims have not yet been adjudicated, and judgment was never entered as to any of Plaintiffs' claims.

In the course of our analysis of Plaintiffs' claims, we made note of the following:

> We do not understand Plaintiffs to be challenging the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), Pub. L. No. 99-410, 100 Stat 924 (1986) (codified at 52 U.S.C. §§ 20301-11).  UOCAVA requires States (as well as U.S. territories and the District of Columbia) to permit otherwise-qualified voters residing or stationed overseas to vote in the last place they were domiciled prior to leaving the United States.  52 U.S.C. §§ 20302, 20310. Although the Amended Complaint does make repeated mention of UOCAVA with respect to Plaintiffs' equal-protection claim, *see, e.g.*, Am. Compl. ¶¶ 4, 111, 112, 114, 125, 135, it has none of the hallmarks we would expect of a complaint challenging UOCAVA's constitutionality or contending that UOCAVA should be expanded to grant some District residents the congressional franchise.  For instance, the Amended Complaint's focus is evidently on securing congressional representation for District residents *qua* District residents, not as (former) residents of States.  *See, e.g., id.* ¶¶ 6 (arguing for "the constitutional right of District residents to band together to further their political beliefs"), 133 ("Without voting representation in the House and the Senate, District residents are unable to rely on local champions in Congress arguing for a fairer distribution of federal funds.").  None of Plaintiffs' allegations as to the Defendants sued pertains to UOCAVA.  *See id.* ¶¶ 59-67.  And none of the requested relief addresses UOCAVA – either striking the statute down wholesale or allowing those District residents who previously resided and voted in States to continue to vote there.  *See id.* Prayer for Relief ¶¶ 1-7.  Because we conclude that Plaintiffs' constitutional claims are otherwise foreclosed, we have no occasion for further discussion of UOCAVA.

Mem. Op. 13 n.5.

Following the issuance of our Memorandum Opinion, Plaintiffs filed the instant Motion, styled "Plaintiffs' Motion for Reconsideration or to Alter or Amend Judgment under Rule 59(e)." Framing their request for reconsideration as "narrowly focused" on "a specific equal protection argument that the Court's Memorandum Opinion largely failed to address," Mem. in Supp. of Mot. 3, ECF No. 58-1, Plaintiffs – while declaring repeatedly that they do not challenge the validity of UOCAVA, *id.* at 4, 6 – argue that UOCAVA's "differential treatment of similarly situated overseas citizens and District residents violates the Equal Protection Clause," *id.* at 1; *see also, e.g., id.* at

1-2 ("[I]t violates the Equal Protection Clause for Congress to allow the 'people of the several States' who move abroad to continue to vote for senators and representatives, but *not* to allow citizens who move from the States to the District to do the same[.]").  The Motion asks the Court to issue declaratory and injunctive relief to the effect that those District residents who relocated to the District from States are entitled to be considered, for the purposes of apportionment and the congressional franchise, as residing in the States from which they moved.  *Id.* at 2.

## II.   Standard of Review

Both Plaintiffs and Defendants invoke Federal Rule of Civil Procedure ("Rule") 59(e) as supplying the relevant rubric for our review of the Motion.  *See* Mem. in Supp. of Mot. 2-3; Defendants' Opposition to Mot. ("Opp.") 2-4, ECF No. 60.  But it is Rule 54(b) that governs.  Rule 54(b) provides:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any . . . other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).  The "express determination" mandate of Rule 54(b) "is a bright-line requirement."  *Bldg. Indus. Ass'n of Superior Cal. v. Babbitt*, 161 F.3d 740, 743 (D.C. Cir. 1998); *see also Blackman v. Dist. of Columbia*, 456 F.3d 167, 175 (D.C. Cir. 2006) ("The mandate of Rule 54(b) is plain and without exception.").  But we made no express determination "that there [wa]s no just reason for delay," FED. R. CIV. P. 54(b), either in the Memorandum Opinion or in the accompanying Order, ECF No. 55, and judgment was not entered as to any of Plaintiffs' claims. Therefore, "[t]he decision was interlocutory," and we treat the Motion "as filed under Rule 54(b)." *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015).

While "[t]he precise standard governing Rule 54(b) reconsideration is unsettled in our Circuit," *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004), our Court of Appeals has recognized that a district court ruling on a Rule 54(b) motion does not abuse its discretion in denying reconsideration on the basis of arguments it has "already rejected on the merits," *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011).  The Court of Appeals has also stated that a district court should not treat the Rule 54(b) standard as containing a "strict prohibition on raising new arguments."  *Jewell*, 802 F.3d at 26.  In the absence of more specific appellate authority, many district courts in this Circuit have employed the following standard:

> Justice may require revision when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court.  Errors of apprehension may

include a Court's failure to consider controlling decisions or data
that might reasonably be expected to alter the conclusion reached by
the court.

*Singh v. George Wash. Univ.*, 383 F. Supp. 99, 101 (D.D.C. 2005) (citations, alterations, and
quotation marks omitted); *accord, e.g.*, *Shvartser v. Lekser*, 330 F. Supp. 3d 356, 360 (D.D.C.
2018); *United States v. Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017); *Jones v. Castro*,
200 F. Supp. 3d 183 (D.D.C. 2016). Additionally, the party seeking reconsideration under Rule
54(b) must establish "that some harm or injustice would result if reconsideration were to be
denied." *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009)
(citation omitted); *accord, e.g.*, *Dynamic Visions, Inc.*, 321 F.R.D. at 17; *Cobell v. Norton*, 355 F.
Supp. 2d 531, 540 (D.D.C. 2005).

## III.    Analysis

The Motion is not a picture of clarity, such that we are not entirely certain under what
theory Plaintiffs are proceeding. There are, as we see it, two possibilities: Either Plaintiffs seek
reconsideration in order to press an "equal protection claim based on [UOCAVA]," Mem. in Supp.
of Mot. 6 – in other words, an equal-protection challenge to UOCAVA itself – or they seek
reconsideration in order to reiterate equal-protection arguments along the lines of those necessarily
rejected by our Memorandum Opinion, *see* Mem. Op. 25 ("Because Congress's District Clause
power does not include the power to contravene the Constitution's express provisions, and because
the Constitution by its terms limits House representation to 'the people of the several states,' we
find that Plaintiffs' claim[] that their exclusion from apportionment is violative of their right[] to
equal protection . . . fail[s] to state a claim upon which relief can be granted."); Mem. in Supp. of
Mot. 3 ("Plaintiffs continue to believe that voting is a right of such fundamental importance that
Congress may properly view that constitutional language as a floor rather than a ceiling on who
may exercise it."). As we explain, neither theory lays a path to success.

The first path seems to be the one that Plaintiffs, in crafting the Motion, most likely
intended to tread. Despite their declaration that they "do not challenge the constitutionality of
[UOCAVA]," Mem. in Supp. of Mot. 4, Plaintiffs expend a fair bit of effort doing exactly that.
Plaintiffs assert that "Congress's extension of voting rights to overseas residents but not to
similarly situated residents of the District violates equal protection," *id.* (capitalization altered),
and that "the Equal Protection Clause *requires* Congress" to provide the congressional franchise
to voters who relocate from a State to the District just as it has to voters who instead relocate
overseas, *id.* Moreover, in support of their preferred remedial outcome – the extension of the
congressional franchise, via their State of origin, to individuals who have relocated to the District,
*id.* at 2 – Plaintiffs rely on the discussion of equal-protection remedies in *Sessions v. Morales-
Santana*, *see id.* at 8 n.7 (quoting 137 S. Ct. 1678, 1699 (2017)), a discussion quite evidently
premised on the existence of an equal-protection challenge to a statute, *see* 137 S. Ct. at 1698
("There are two remedial alternatives . . . when a statute benefits one class . . . and excludes another
from the benefit . . . . A court may either declare the statute a nullity and order that its benefits not
extend to the class the legislature intended to benefit, or it may extend the coverage of the statute
to include those who are aggrieved by exclusion." (citations, alterations, and internal quotation
marks omitted)).

While we are counseled by *Jewell* that the "as justice requires" rubric does not necessarily
serve as a bar to a Rule 54(b) movant's raising new *arguments*, 802 F.3d at 26, the absence of such

a barrier does not assist Plaintiffs in their primary traverse, which is an attempt to assert a new *claim*. We set forth in our Memorandum Opinion some of the reasons we did not originally consider Plaintiffs to have been pressing an "equal protection claim based on [UOCAVA]," Mem. in Supp. of Mot. 6: The Amended Complaint's evident focus "on securing congressional representation for District residents *qua* District residents, not as (former) residents of States"; the absence of any UOCAVA-related allegations as to any of the Defendants; and the fact that "none of the requested relief addresse[d] UOCAVA[.]" Mem. Op. 13 n.5. Plaintiffs now charge the Court with having failed to "directly respond to Plaintiffs' equal protection claim based on [UOCAVA]," Mem. in Supp. of Mot. 6, but they surmise that "the Court declined to address the issue because it was unclear to the Court whether Plaintiffs sought relief modeled on the voting rights of citizens living overseas," *id.* at 1 ("Plaintiffs here clarify that they did and do seek such relief, as well as continuing to request whatever alternative relief the Court may deem just and proper." (citing Am. Compl. Prayer for Relief ¶ 7)).

In other words, Plaintiffs now contend that the Court "patently misunderstood" them, *Singh*, 383 F. Supp. 2d at 101 – but they entirely fail to contend with two of the three iterated bases for our conclusion that they were not challenging UOCAVA in the first instance, which again included the absence of any allegations connecting the Defendants to the statute Plaintiffs now purport to have challenged. Even accepting *arguendo* the soundness of Plaintiffs' premise that their catch-all, "boilerplate request[]" for relief, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 618 n.19 (D.C. Cir. 2017), should be read to pray for relief fashioned on UOCAVA (which would run only to a subset of the named Plaintiffs[2]), Plaintiffs do not address the other aspects of the Amended Complaint that informed our conclusion that UOCAVA as such was not at issue. Because our prior reading of the Amended Complaint satisfied us that Plaintiffs were not in fact mounting an equal-protection challenge to UOCAVA, and because the Motion fails to call that conclusion into question, we cannot find that justice requires us to reconsider our prior rulings to account for the challenge to UOCAVA that Plaintiffs now seek to assert.

Returning now to the trailhead, we need only take a few steps along the second path before concluding that this way, too, is a dead end. If (despite all appearances) Plaintiffs are not attempting to assert a challenge to UOCAVA itself, *see, e.g.*, Mem. in Supp. of Mot. 6 ("Plaintiffs do not challenge [UOCAVA.]"), they must be relying on UOCAVA to reargue their original equal-protection claim. But we previously found the justiciable aspects of this claim, together with Plaintiffs' other constitutional challenges to the apportionment statutes (2 U.S.C. § 2a and 13 U.S.C. § 141), to be foreclosed by the Constitution itself. Mem. Op. 25; *see generally id.* at 21-25. Insofar as Plaintiffs seek to relitigate that issue, they seem to point to UOCAVA as evidence that Congress is in fact empowered to give the operative constitutional language – "the people of the several States"[3] – a sufficiently expansive reading as to encompass individuals who once lived in the "several States" but now live elsewhere. *See, e.g.*, Mem. in Supp. of Mot. 3 ("Harmonizing [UOCAVA] with this Court's ruling that House representation is limited [to] 'the people of the several States' requires understanding Congress to have construed that phrase to *include* individuals from the 'several States' who moved overseas."). But, as explained above, if anything,

---

[2] Of the eleven Plaintiffs named in the Amended Complaint, two do not purport to have ever lived in a State. Am. Compl. ¶¶ 26, 54.

[3] The Constitution provides that "[t]he House of Representatives shall be composed of Members chosen every second Year by the People of the several States," U.S. CONST. art. I, § 2, cl. 1, and that "Representatives shall be apportioned among the several States according to their respective numbers," *id.* amend. XIV § 2.

UOCAVA merely supports the premise that Congress *might* treat residents of the District of Columbia as residents of the State in which they resided before moving to the District; UOCAVA provides no precedent for treating residents of the District of Columbia *qua* residents of the district as among "the people of the several States." It was that premise – that residents of the District *qua* residents of the District are not among "the people of the several States" – that informed our conclusion that Plaintiffs' equal-protection law claim was pretermitted by the Constitution's own dictates. *See* Mem. Op. 2. Plaintiffs' motion for reconsideration gives us no discernable reason to reexamine that fundamental premise. As such, we again cannot conclude that justice requires our reconsideration. *See Singh*, 383 F. Supp. 2d at 101.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' Motion for Reconsideration or to Alter or Amend Judgment under Rule 59(e), ECF No. 58, which we have construed as a Rule 54(b) motion, is **DENIED**.

An accompanying order will follow.

/s/
ROBERT L. WILKINS
United States Circuit Judge

/s/
RANDOLPH D. MOSS
United States District Judge

/s/
TREVOR N. McFADDEN
United States District Judge

Date:  September 16, 2020